## James Bowlin *vs.* Thomas G. Nye.

Trover will not lie against a carrier for goods lost by nonfeasance merely.

In such an action, instructions to a jury that they might find a conversion, if the defendant so managed as to interfere with the rights of the plaintiff to, and control over, the property, so that the plaintiff lost the same, were held too indefinite for application by the jury, and as having a tendency to mislead them.

Trover to recover the value of a certain bale of cloth delivered to the defendant. At the trial in the court of common pleas, the plaintiff introduced the following evidence: Moses Whitherell testified that, in October, 1848, he received a bale of cloth directed to the plaintiff, and marked James Bowlin. That he brought it home, and the next morning stopped at the defendant's house and took in some bales into his own wagon for him and carried them all, including the bale for the plaintiff, down to the landing, and Captain Nye's boat came along and he delivered the bales to Mr. Potter into the boat. That he had a conversation with Captain Nye in the spring of 1849; asked him what had become of the bale of cloth. He said he did not know; he thought that he must have landed it at Hutchinson's Island through mistake. (Hutchinson's Island is south of Charleston.) That he would write out and see if he had left it there or not.

Mr. Potter testified that he was mate of The Pearl in 1848. "In the fall of that year received from Whitherell some bales which he said contained cloth. There were some four or five bales. Received them at North Falmouth landing into the boat, carried them on board the vessel, and put them down in the hold. There was one bale larger than the rest. Thought he hoisted it in; sure that he delivered all the cloth which he received on board the schooner. Have talked with Nye; he told me he did not know what had become of the bale in question did·n't know as he had ever received such a bale; he put ashore all that he received at Charleston and at Hutchinson's Island." On being cross-examined, the witness added "that he could not remember any marks upon the cloth, nor the exact number of bales; thinks there were four or five. Sup-

posed that it was my business to attend to receiving and delivering, under the direction of the Captain. All the bales on board the vessel went out either at Charleston or Hutchinson's Island, some went out at both places. The largest bale went on shore at Charleston. Saw it put on the trucks. When Captain Nye came on board, he told him he had received some cloth of Captain Whitherell; he said he knew about it, and it was all right."

There was no evidence as to the direction on the bale in question, except that it was marked " James Bowlin," and no evidence tending to show that any order was given where it should be left, or any instructions of any kind in reference to its delivery.

Upon this evidence, the defendant asked the judge, *Bishop*, J. to rule, first, that the action could not be maintained; secondly, that it could not be maintained without proof of a demand and refusal, there being no act of conversion shown. But the judge declined so to do, and instructed the jury that they might find a conversion if they were satisfied that the defendant had appropriated the property to his own use, or had so managed as to interfere with the rights of the plaintiff to, and control over, the property in question, so that the plaintiff had lost the same. The verdict being for the plaintiff, the defendant excepted.

*T. D. Eliot*, for the defendant.

*T. G. Coffin*, for the plaintiff.

METCALF, J. The court cannot see, in the testimony set forth in this bill of exceptions, any sufficient evidence of a conversion of the plaintiff's goods by the defendant. The most which that testimony and all legitimate inferences from it prove, seems to us to be, that those goods were put on board the defendant's schooner, for transportation, and have since been lost. But an action of trover cannot be maintained against a carrier or wharfinger for goods lost by him or stolen from him. *Owen* v. *Lewyn*, 1 Vent. 223; *Anon.* 2 Salk. 665; *Ross* v. *Johnson*, 5 Bur. 2825. Conversion, when applied to the action of trover, imports an unlawful act, and not a mere nonfeasance. A misdelivery of the goods by the

defendant would have been a conversion of them, and would therefore have rendered him liable in trover; for it would have been an unlawful act. *Devereux* v. *Barclay*, 2 Barn. & Ald. 702; *Hawkins* v. *Hoffman*, 6 Hill, 586. But there is no proof of misdelivery, in the present case. It does not appear where or to whom the goods were delivered, if at all, nor where they ought to have been delivered.

Were, then, the proper instructions given to the jury, upon the reported evidence? We think not. If the court, by the instructions given, meant only that the jury might find for the plaintiff, if they were satisfied that the defendant assumed upon himself the property and right of disposing of the plaintiff's goods, (which is Lord Holt's general definition of conversion, 6 Mod. 212,) then there was not evidence which would warrant the jury so to find. Besides; the instruction that the jury might find a conversion, if the defendant "had so managed as to interfere with the rights of the plaintiff to, and control over the property, so that the plaintiff had lost the same," was too indefinite for practical application by the jury, and also had a tendency to mislead them. They might have understood that the defendant was guilty of a conversion, if he had "so managed" that the goods were lost through his mere negligence. They should have been more particularly instructed as to the different acts which constitute a conversion, and then have been directed to decide whether any of those acts had been done by the defendant.

If the nonfeasance of the defendant was the cause of the loss of the goods, the plaintiff's remedy, when this action was commenced, was a special action upon the case, either *ex contractu* or *ex delicto*.                    *New trial ordered.*